38 N.J. Super. 156 (1955)
118 A.2d 425
HUBERT L. PFAHLER, PETITIONER-RESPONDENT,
v.
ECLIPSE PIONEER DIVISION OF BENDIX AVIATION CORPORATION, RESPONDENT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued August 22, 1955.
Decided November 14, 1955.
*158 Before Judges DAVIDSON, SPEAKMAN and PINDAR.
Mr. Walter R. Hespe argued the cause for appellant (Mr. Walter H. Jones, attorney).
Mr. Sidney Reitman argued the cause for respondent (Messrs. Kapelsohn, Lerner, Leuchter & Reitman, attorneys; Mr. Lawrence E. Maisel, on the brief).
The opinion of the court was delivered by SPEAKMAN, J.S.C. (temporarily assigned).
The claim petition in this matter was filed in the Division of Workmen's Compensation on February 24, 1954. By stipulation of the parties the issue of jurisdiction, i.e., whether the petition had been filed within the statutory period, was tried first before presenting any proof with respect to disability resulting from the accident of December 6, 1950. On the proofs before him the Deputy Director held that the action had been commenced within time and that, therefore, the Division had jurisdiction to hear the matter. He was about to set the case down for trial on the remaining issues when the respondent asked for a continuance in order to appeal from the determination of the jurisdictional question.
The action of the Deputy Director was affirmed by the judgment of the County Court on March 18, 1955. The correctness of the judgment of the County Court, and, necessarily, the correctness of the determination by the Division are challenged by the employer on this appeal.
It is settled that the filing of the claim petition within the time prescribed by R.S. 34:15-51 is a jurisdictional requirement. Miller v. Beller Electric Supply Co., 100 N.J. Eq. 444 (Ch. 1927); Valentine v. Walter Kidde & Co., 136 *159 N.J.L. 292 (Sup. Ct. 1947); Riccioni v. American Cyanamid Co., 26 N.J. Super. 1 (App. Div. 1953), certification denied 13 N.J. 289 (1953); Schwarz v. Federal Shipbuilding and Dry Dock Co., 16 N.J. 243 (1954).
Prior to the change brought about by the adoption of the Constitution of 1947, the former Supreme Court held that it could review by certiorari the determination of the then Workmen's Compensation Bureau in denying a motion to dismiss a claim petition as having been filed out of time, even though not a final judgment, since the matter was one of jurisdiction. Deslauriers Column Mould Co. v. Jackson, 3 N.J. Misc. 258 (1925). Under our present practice it has been held that Rule 3:81-8 (now R.R. 4:88-8) "was intended to provide an appeal, as a matter of right, to the Appellate Division from any state administrative agency in any case in which, under our former practice, a review by our former Supreme Court was available by means of a prerogative writ." Halloran v. Haffner, 25 N.J. Super. 241 (App. Div. 1953). In view of the 1954 amendments to R.R. 2:2-3(b) and R.R. 4:88-8, it is doubtful whether the foregoing holding is still valid, although there appears to be no decision construing these amendments with respect to a situation like the one present here.
However, no objection was interposed to the appeal to the County Court, and none has been made here. Since there can be no question that this court would ultimately have power to review the jurisdictional question, we proceed to a consideration of the matter on the merits without further comment upon the route traveled to arrive at this destination except to say that our action in so doing is not to be taken as an approval of the procedure followed. See Temple v. Storch Trucking Co., 3 N.J. 42 (1949), at page 45.
The medical treatment which an employee can require and which is actually furnished by an employer is considered "payment of compensation" within the meaning of the statute (R.S. 34:15-51) requiring a petition to be filed within two years after the last payment of compensation. Betsy Ross Ice Cream Co. v. Greif, 127 N.J.L. 323 (Sup. *160 Ct. 1941); Donoher v. American Steel & Wire Co., 2 N.J. Super. 72 (App. Div. 1949); Sampson v. Thornton, 8 N.J. 415 (1952).
The single issue presented for determination by this appeal is whether medical treatment was furnished the petitioner within two years prior to the filing of the petition.
While there are some conflicts in the evidence, the record supports the following factual conclusions: that petitioner was employed by the respondent at the time of the alleged accident on December 6, 1950; that he injured his back during the course of his employment; that he reported to the plant dispensary a few days later and was sent to the employer's plant doctor, who took X-rays, taped his back, and sent him to the plant dispensary for diathermy treatments twice a week for several weeks; and that the doctor examined him once a week for several weeks. During this time petitioner continued to work. He received no further treatments at that time, but thereafter he returned to the plant dispensary early in 1952 and complained that the pain in his back had recurred and that his left leg was numb; he was again sent to the plant doctor (Dr. Rucker), who later identified the date of this event as April 8, 1952. Dr. Rucker examined him and referred him to Dr. Policastro for a neurological examination. After petitioner was examined by the neurologist he was told by the plant personnel office for the first time that he would receive no further treatments by the company. There had not previously been any express disavowal of liability by the employer, nor did the employer advise the petitioner that he was being sent to the plant doctor solely for the purpose of determining the existence of a causal connection between the alleged injury and the accident.
The present petition is marked filed February 24, 1954, although there are statements in the record that it was filed March 1, 1954. However, it is immaterial which is the correct date because in either event it was filed within two years of the events of April 8, 1952, and more than two years after the accident of December 8, 1950.
*161 Two recent cases in our Supreme Court, Sampson v. Thornton, 8 N.J. 415 (1952), and Schwarz v. Federal Shipbuilding and Dry Dock Co., 16 N.J. 243 (1954), have considered the problem of what constitutes medical treatment within the meaning of our compensation act. The decisions in those cases thoroughly cover the law on the subject and nothing would be gained by reiterating at length here what was said there.
Under the facts of the first case, Sampson v. Thornton, the court held that the employer had provided medical treatment; while under the facts of the second case, Schwarz v. Federal Shipbuilding and Dry Dock Co., a contrary result was reached.
The appellant-employer argues strenuously here that the facts of the present case resemble more nearly the facts in the Schwarz case than those in the Sampson case, and that we, therefore, should reach the same result as was reached in the Schwarz case. We feel otherwise.
The feature which differentiates the foregoing cases is that in the Sampson case the last examination was held to be part of a continuous course of medical treatment, while in the Schwarz case, it was held that the examination was merely for the purpose of determining causation.
In cases of this type the determining factor is whether the total pattern of conduct would be likely to lull the petitioner into resting on his rights until the time for the filing of the petition under the act had elapsed. In the present case it is clearly established that following the accident of December 6, 1950, medical treatment in the form of taping of petitioner's back and diathermy therapy was furnished petitioner by the employer. As a consequence, and notwithstanding the lapse of time between the rendering of this treatment and the events of April, 1952, it is our view that the petitioner was entitled to regard the examination of April 8, 1952, as part of a continuous course of medical treatment in the absence of any disclaimer of liability by the employer. This conclusion is in accord with the philosophy repeatedly expressed by our appellate courts that the Workmen's *162 Compensation Act, being remedial in nature, should be construed to effectuate the beneficent purposes intended by the Legislature.
In our view the present case is clearly distinguishable from the Schwarz case where the employer never authorized medical treatment but merely authorized an examination for the purpose of determining the existence of a causal relationship.
We reach the same conclusion as that reached by the deputy director, and incidentally by the county judge, that the employer did supply medical treatment to the petitioner on April 8, 1952, which constituted a payment of compensation within the meaning of the Act, and that, therefore, the petition was timely filed.
In the light of what was said earlier herein our mandate would ordinarily go directly to the Workmen's Compensation Division. However, there is a judgment in the County Court, and accordingly, we remit the case to the County Court with directions that the record be remitted to the Workmen's Compensation Division for hearing on the remaining issues of the case.
Judgment is affirmed.
PINDAR, J.S.C. (temporarily assigned) (dissenting).
I vote to reverse the judgment of the Bergen County Court as well as the judgment of the Workmen's Compensation Division on the authority of Schwarz v. Federal Shipbilding and Dry Dock Company, 16 N.J. 243 (1954).
The petitioner was admittedly injured in an accident which occurred in and arose out of the course of his employment with the respondent on December 6, 1950. The claim petition was filed on February 24, 1954, which is too late to give the Workmen's Compensation Division jurisdiction under R.S. 34:15-51 unless the activities of the respondent within a two year period prior to the filing of the claim amount to a "payment of compensation." Such is the undoubted law *163 as expressed in the majority opinion. But I do not agree that the record sub judice warrants the conclusion that "the medical treatment which an employee can require and which is actually furnished by an employer" sustains petitioner's right to compensation. The petitioner at bar was not lulled into expectation of compensation because of any treatment upon the related "second occasion," and nothing appears to have occurred then which in any wise suggested his right thereto. No payment of compensation was made in this case as was in Sampson. No statements are here chargeable to the employer upon which petitioner might have relied for his benefit of an extended period of two years after the examination in April, 1952. After the completion of the few weeks of treatment early in 1951 petitioner acquired an extension for filing until a corresponding date early in 1953. His petition filed February 24, 1954 was too late and should have been dismissed.
This issue under the submission of the case to this court amounts to the question of whether the facts are ruled by the case of Schwarz v. Federal Shipbuilding and Dry Dock Co., supra, or by the case of Sampson v. Thornton, 8 N.J. 415 (1952). Therefore, the following comparative chronology will be helpful:

 SAMPSON v. THORNTON
 Date Event
10-9-46 Accident
3 weeks subsequently Petitioner hospitalized
1-8-47 to 5-13-47 Admitted treatment by company Medical Department
12-30-46 Cessation of temporary compensation of $25 per week
6-3-47 Petitioner paid 1% permanent partial disability
April 1948 Complaint of insufficiency of award
May 1948 Told by company he had gotten all he was entitled
 to. Told by insurance representative that he
 would try to get him additional compensation
June 11, 1948 Examination by company doctor
July 1949 Claim petition filed

*164
 SCHWARZ v. FEDERAL SHIPBUILDING AND DRY DOCK CO.
11-2-43 Accident
11-3-43 Examination by company doctor, given medical device
12-2-43 Examination by company doctor who made suggestions
 to him
1-27-45 Treatment from own doctor
1-29-45 Examination by company doctor and reference to Dr.
 "A"
2-1-45 Dr. "A" referred petitioner to Dr. "B"
2-5-45 Examination by Dr. "B," plus diagnosis
3-1-45 Company referred petitioner to Dr. "C," who
 examined. Shortly thereafter compensation
 denied.
11-19-46 Petitioner admitted to hospital by self
2-7-47 Claim petition filed
3-1-47 Discharge from hospital which was followed by his
 death
 THIS APPEAL
12-6-50 Accident
12-8-50 Reported to company medical department
12-8-50 Referred to Dr. Rucker (employer's doctor) and who
 petitioner says taped his back
7 to 8 weeks Received diathermy treatments at company medical
 dispensary
12-51 or 1-52 Went to plant dispensary
Early in 1952 Referred to Dr. Rucker for examination
April 1952 Dr. Rucker (without treatment) referred to Dr.
 Policastro for examination, and shortly after,
 compensation denied
2-24-54 Claim petition filed.

There is but one factual issue on this appeal, that is whether or not Dr. Rucker taped the petitioner's back upon the examination of December 8, 1950, which at this stage of the case should be resolved in favor of the petitioner. Even so, the above comparison indicates to me that the case is ruled by Schwarz rather than by Sampson.
It is apparent that in Sampson treatment commenced after the hospitalization of the petitioner and was the continuing rehabilitative effort which culminated in the payment of 1% *165 permanent partial disability in June 1947. In April 1948, still within time, petitioner in effect attempted to open his case relying on the prior treatment and payment of compensation. Furthermore, he was told by the respondent's representative that he would try to get him additional compensation. A careful reading of the opinion in the Sampson case leaves one with the abiding conviction that this was the feature to which the court gave the most weight. The petitioner had every reason to expect that the line of treatments which commenced immediately after his hospitalization and culminated in an award of compensation, would be continued further.
In the Schwarz case the examination made by the company medical department on November 2, 1943 was accompanied by what is in law treatment  that is, the furnishing of the medical device. Furthermore, the company doctor advised and made suggestions.
There was no payment of compensation, and subsequent thereto only examinations, the last one of which was within two years prior to the filing of the claim petition.
It is apparent to me from the record here that treatments ceased well over two years prior to the filing of the claim petition and the case is in such a posture that we should be guided by the following comment of Justice Oliphant in the Schwarz case:
"Where medical treatment which could have been required under the statute is actually furnished by the employer, such treatment is considered `payment of compensation' and a claim petition filed within two years of such `payment' is within time. [Cases cited.]
It is equally clear that the doctrine of considering medical treatment as part of the compensation should not be extended to include a medical examination which may be necessary to determine whether a compensable injury exists. This could very well result in employers and insurers denying liability in all cases because examinations to determine liability or causation could have the result of removing the bar of the limitations fixed in the statute.
We have no hesitancy in holding that a mere medical examination for the purpose of determining the causation, or question of liability under the statute cannot be classified as a payment of compensation so as to effect the removal of the bar of the statute with respect to the filing of claim petitions."
*166 Finally, it will be noticed that the Schwarz case was decided subsequent to the Sampson case and must be considered to be interpretive thereof.