JOSEPH A. CAPUTO, PETITIONER-RESPONDENT, v. BEST
FOODS, INC., RESPONDENT-APPELLANT.

Argued February 18, 1963—Decided March 4, 1963.

*Mr. Guy H. Haskins, Jr.* argued the cause for respondent-appellant (*Mr. David L. Hack,* on the brief; *Messrs. Skeffington, Haskins & Robottom,* attorneys).

*Mr. M. Marvin Soperstein* argued the cause for petitioner-respondent (*Mr. Mortimer Wald,* attorney).

The opinion of the court was delivered

PER CURIAM. This workmen's compensation case was certified while the appeal from the county court judgment in favor of petitioner was pending in the Appellate Division.

On September 1, 1949 Joseph A. Caputo sustained an accident arising out of and in the course of his employment with Best Foods, Inc., as the result of which he lost the sight of both eyes. On May 21, 1953 he was awarded compensation for total permanent disability. In the meantime a suit brought by him against a third-party tort-feasor was settled for $60,000. A fee of $10,000 plus $200 as expenses was paid to his attorney in connection with this latter recovery. At that time the known and fixed workmen's compensation liability of Best Foods, Inc. for medical and hospital expenses, and for temporary and total permanent disability amounted to $17,304.50. Caputo was credited with $3,084.08 against

that amount, representing the employer's statutory share in Caputo's attorney's fee and expenses in the third-party action. *N. J. S. A.* 34:15–40; see *Caputo v. The Best Foods,* 17 *N. J.* 259 (1955). The attorney's retainer in that action was 16–2/3% of the settlement. As a result, Caputo's total recovery for purposes of determining the offset required by *N. J. S. A.* 34:15–40 against the employer's compensation liability was considerably in excess of that liability.

The 450-week period covered by the compensation award for total permanent disability expired on December 15, 1959. At that time the Rehabilitation Commission certified that rehabilitation for Caputo was not feasible and therefore he was entitled to continuing monetary benefits as prescribed by *N. J. S. A.* 34:15–12(b). Under that section of the statute, since he was incapable of earning any money, his weekly benefit of $25 continued indefinitely subject to "such periodic reconsiderations and extensions as the case may require." In other words, if the total earning incapacity persisted for the remainder of his life, Caputo's right to the weekly allowance would continue for that period.

On expiration of the 450-week period Caputo requested the employer to begin making payments of $25 weekly and to continue doing so as long as Caputo's earning incapacity existed. Although the total compensation liability to the end of 450 weeks was far short of exhausting the credit to which the employer was entitled because of the third-party settlement, Caputo contended that the weekly benefit which followed upon failure of rehabilitation was a separate and independent statutory award which could not be offset by the third-party recovery. More particularly, he asserted that such weekly benefit was a "reparative payment" and not "compensation" against which the third-party settlement could be credited under *N. J. S. A.* 34:15–12(b). On the employer's refusal to pay, a petition was filed to compel recognition of the claim.

The employer's position was that no duty exists to make any weekly payments after the 450-week period until its

total accrued liability for workmen's compensation equals the full credit to which it is entitled by reason of the recovery against the third party.

*N. J. S. A.* 34:15–12 (b) which controls the issue says:

"This compensation [for total permanent disability] shall be paid for a period of 450 weeks, at which time *compensation payments* shall cease unless the employee shall have submitted to such physical or educational rehabilitation as may have been ordered by the rehabilitation commission, and can show that because of such disability it is impossible for him to obtain wages or earnings equal to those earned at the time of the accident, in which case further weekly payments shall be made during the period of such disability the amount thereof to be the previous weekly compensation payment diminished by that portion thereof that the wage, or earnings, he is then able to earn, bears to the wages received at the time of the accident. If his wages or earnings equal or exceed wages received at the time of the accident, then his *compensation* rate shall be reduced to $5.00. In calculating *compensation* for this extension beyond 450 weeks the minimum provision of $10.00 shall not apply. This extension of *compensation* payments beyond 450 weeks shall be subject to such periodic reconsiderations and extensions as the case may require, * * *." (Insertion and emphasis added.)

The Judge of Compensation agreed that the employer was entitled to credit the third-party settlement, less the statutory deductions, against the continuing weekly benefits. But he added a qualification. He concluded that the portion of the statute quoted above granting $5 weekly compensation after 450 weeks was applicable, and accordingly awarded that sum weekly for the 61 weeks between December 15, 1959, the expiration date of the 450 week period, and the date of his determination. The effect of his holding was that an employee who has no earning capacity after 450 weeks and so continues to be entitled to the original weekly benefit (in this case $25 weekly) has the same right to receive a further $5 weekly as an employee whose earning capacity has been restored to the extent that his earnings equal or exceed those being paid to him when the original accident occurred. By this construction of the statute, Caputo was given an independent compensation award of $5 weekly for which the em-

ployer would not receive any credit against the third-party settlement.

We find no basis whatever in the statute for the additional $5 weekly allowance. The legislative language is free from ambiguity in that regard. The provision for the $5 payment is clearly limited to those cases where there would be a cessation of compensation payments if at the end of the 450 weeks or thereafter, the employee is receiving wages or earnings equal to or greater than those being paid to him at the time of the compensable accident.

The employer appealed to the county court from the additional award. The judge of that court disagreed with the $5 weekly allowance, but construed the statute to cut off the employer's right to credit at the end of 450 weeks. In other words, he held that no matter how large a recovery an employee obtains against a third party, or how large a balance of that recovery remains in total permanent disability cases after offsetting compensation payments to the end of the 450-week period, the employee is entitled to retain that balance as well as any further weekly payments which become due thereafter because of failure of rehabilitation.

We are unable to discover any justification for such a construction of the statute, or any support for the view that the Legislature intended to sanction the double recovery which is thus implied. The county court seemed to feel that a liberal interpretation of *N. J. S. A.* 34:15–12(b) warranted treating benefits to be paid after 450 weeks as "extended payments" or "reparative payments" as distinguished from "workmen's compensation payments." As has been indicated above, the statute refers to the continuing payments after the 450 weeks as "compensation," and we have no doubt that all weekly monetary benefits, including those required to be made because of partial or total failure of rehabilitation, must be so classified. The opinions of the various courts have routinely described such payments as compensation or continuing compensation. *Clark v. American Can Co.*, 4 *N. J.* 527 (1950); *Lukis v. Armour & Co.*, 125 *N. J. L.* 92, 94–95

(*Sup. Ct.* 1940). Expressions such as "reparative compensation" (*Petersen v. Foundation Co.,* 128 *N. J. L.* 234, 238 (*Sup. Ct.* 1942)) and "reparative payments" are to be found also. *Caputo v. The Best Foods, supra,* at *pp.* 268–269. But use of those descriptive terms reveals no judicial intention to treat post-450-week period benefits as something other than compensation. Since *N. J. S. A.* 34:15–40(b) extinguishes liability for compensation payments to the extent of the third-party recovery, less the deductions for attorney's fee and specified expenses of suit, it must follow that the county court erred in declining to permit the employer to offset that recovery against compensation that became due after December 15, 1959.

Caputo died of causes unrelated to the accident on November 17, 1961 while the appeal was pending in the county court. As a consequence of the construction of the statute by that tribunal, a judgment was entered for $25 weekly for 101 weeks (December 15, 1959 to November 17, 1961), or $2,525, that amount to be paid independently of the third-party settlement. For the reasons stated, the award cannot stand.

▉ One aspect of the matter, however, apparently went unnoticed in the Workmen's Compensation Division and county court. Under *N. J. S. A.* 34:15–40, in the event of the workman's recovery against a third party, the employer is chargeable with a counsel fee on the basis of his full compensation liability. *Caputo v. The Best Foods, supra.* The extent of that obligation could not be determined when the $60,000 settlement was made, because it was not known then whether Caputo would survive beyond the 450-week period, or if he survived, what, if any, continuing compensation liability the employer would have. Therefore, the attorney's fee assessed against Best Foods, Inc. was based on the then known liability, *i. e.,* $17,304.50. Now it has been determined that because of failure of any rehabilitation, the employer had an additional liability to pay compensation to Caputo at the rate of $25 weekly for the 101 weeks between December 15, 1959

and November 17, 1961. That obligation, totaling $2,525 is well within the balance remaining on the third-party recovery and will be credited against it. But the employer must assume an additional attorney's fee of 1/6 thereof, or $420.83. That amount is due Caputo's estate.

The judgment of the county court is modified accordingly and the matter is remanded for proceedings in accordance herewith.

No costs.

*For reversal* — Chief Justice WEINTRAUB, and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN—7.

*For affirmance*—None.